52 F.3d 326
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Deborah GARNER and Dawn Garner, Defendants-Appellants.
 Nos. 94-3225, 94-3229, 94-3379 and 94-3397.
 United States Court of Appeals, Sixth Circuit.
 April 10, 1995.
 
 Before: NELSON and DAUGHTREY, Circuit Judges; and CHURCHILL, Senior District Judge.*
 PER CURIAM.
 
 
 1
 In the first count of a three-count indictment Deborah Garner and Dawn Garner are jointly charged with knowingly communicating false information (in violation of 18 U.S.C. Secs. 1365(c)(1) and 2) that on or about June 14, 1993, Deborah Garner opened a can of Diet Pepsi and found therein a syringe, needle and cap.
 
 
 2
 In the other two counts they are respectively charged with making a similar false statement to a special agent of the Food and Drug Administration in violation of 18 U.S.C. Sec. 1001.
 
 
 3
 They were convicted of all charges by jury trial in the Northern District of Ohio, Eastern Division.
 
 
 4
 On timely direct appeal they each assert several claims of error including the claim that the evidence was insufficient to support their convictions.
 
 
 5
 Except with respect to whether the syringe was in the can when it was opened, the facts are not in dispute.[1]
 
 
 6
 During the daytime on June 13, 1993, Deborah Garner purchased several cans of soft drinks, including a can of Diet Pepsi, from a vending machine. The can of Diet Pepsi was not immediately consumed and found its way, unopened, into the refrigerator in Deborah Garner's home in Cuyahoga Falls, Ohio.
 
 
 7
 The Diet Pepsi had been canned at the Pepsi Cola Company's processing facility at Twinsburg, Ohio, on June 3, 1993.
 
 
 8
 Deborah Garner and her adult daughter, Dawn Garner, were watching television in the Garner residence. About midnight Deborah Garner went to her kitchen, removed the can from her refrigerator and opened the can. The can either contained a syringe when it left the canning facility or a syringe was inserted therein after it was opened. After the can was opened, other family members were called to the kitchen and a videotape recording was made of the syringe being removed from the can.
 
 
 9
 The allegation that the syringe was found in the can and details concerning discovery of the syringe were communicated to Pepsi Cola Company employees, to a special agent of the Drug and Food Administration and to members of the news media.
 
 
 10
 These communications provided the basis for the charges in the indictment.
 
 
 11
 The government introduced extensive evidence concerning the manner by which Diet Pepsi is canned at a facility like the one in Twinsburg, Ohio. When the filling and sealing line was running at full speed it would be virtually impossible for an employee to insert a foreign object in a can. When the line was stopped, as it was at times on June 3, 1993, it was possible for any one of several employees to take a syringe from a returned can[2] and insert it in a cleaned can. It was also possible that a syringe could be fastened to the inside of a can with corn syrup before it entered the filling line. Corn syrup, an essential ingredient used in the production process, was readily available in the plant. In a test conducted by the FDA, 19 of 20 syringes fastened in this manner successfully traveled through the filling process without detection and were sealed in cans of Diet Pepsi.
 
 
 12
 In its brief on appeal the government states that the circumstances of the statements themselves along with the videotape of the alleged discovery establish the falseness of the claim.
 
 
 13
 The government, however, is unable to point to any circumstance or combination of circumstances concerning the events which were not as consistent with innocence as with guilt.
 
 
 14
 It was not, for example, remarkable for the appellants to report the incident to Pepsi Cola Company soon after it occurred because the can itself contained an "800" number to facilitate such reporting.
 
 
 15
 Making a videotape recording of the incident and reporting it to the news media might be evidence of financial motivation, but it was not evidence of falsity.
 
 
 16
 On the videotape the syringe appears to contain no fluid when it emerged from the can. The government offered no evidence that it would have contained fluid had the syringe been inserted during the canning process.
 
 
 17
 In reviewing a claim challenging the sufficiency of the evidence, the district court and the appellate courts are to apply the same standard.
 
 
 18
 Evidence is sufficient to support a criminal conviction if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This court "will reverse a judgment for insufficiency of evidence only if [the] judgment is not supported by substantial and competent evidence upon the record as a whole, and ... this rule applies whether the evidence is direct or wholly circumstantial." United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984). It is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt. [United States v.] Adamo, 742 F.2d at 932 [ (6th Cir.1984), cert. denied, 469 U.S. 1193 (1985) ].
 
 
 19
 United States v. Beddow, 957 F.2d 1330, 1334 (6th Cir.1992).
 
 
 20
 Applying this standard to the evidence in this case, we conclude that the judgment of conviction is not supported by substantial and competent evidence upon the record as a whole.
 
 
 21
 The convictions are reversed.
 
 
 22
 One other issue requires action by this court. The appellants have appealed a district court order granting Pepsi Cola Company's motion for return of videotapes of the canning process. This order is affirmed.
 
 
 
 *
 Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Dawn Garner also raises an issue which we need not pursue. It is possible that her mother opened the can and inserted a syringe without Dawn Garner's knowledge and that Dawn Garner's statements, if inaccurate, were not knowingly false
 
 
 [2]
 There was evidence that it is a common practice for diabetics to dispose used syringes into empty soft drink cans